368 F.2d 925
 Peter G. SCHAAF, Trustee, Libellant,
v.
S. S. NORTH AMERICAN, Official No. 211076 Together With the Whole of the Masts, Bowsprits, Boats, Anchors, Cables, Chains, Rigging, Tackle, Apparel, Furniture, and All Other Necessaries Thereunto Appertaining and Belonging, and All Additions, Improvements and Replacements
Chicago, Duluth & Georgian Bay Transit Company, Intervening Petitioner-Appellant.
 No. 15102.
 United States Court of Appeals Third Circuit.
 Argued February 3, 1966.
 Decided October 5, 1966.
 
 Donald J. Miller, Detroit, Mich., for appellant.
 Peter G. Schaaf, in pro. per. (Gifford, Graham, MacDonald & Illig, Michael L. Carr, Erie, Pa., on the brief), for libellant-appellee.
 Before STALEY, SMITH and FREEDMAN, Circuit Judges.
 OPINION OF THE COURT
 STALEY, Circuit Judge.
 
 
 1
 Chicago, Duluth and Georgian Bay Transit Company ("Georgian Bay") appeals from the dismissal of its petition to intervene in an admiralty proceeding to foreclose on a preferred ship mortgage.
 
 
 2
 The events giving rise to the present litigation began in 1962. At that time Georgian Bay, due to declining revenues, decided to sell one of the two cruise ships it had operated on the Great Lakes for a number of years. To insure its competitive position, Georgian Bay incorporated into the contract of sale of the S.S. North American a covenant not to compete. The purchaser, Canadian Holiday Company, Inc., executed a preferred ship mortgage and received a bill of sale. Both of these documents were recorded, see 46 U.S.C. § 921; however, neither of them contained the covenant.
 
 
 3
 Subsequently, Georgian Bay, the mortgagee, assigned the mortgage to Peter G. Schaaf as trustee for certain creditors. Schaaf promised both in the assignment agreement and in the mortgage assignment itself to be bound by the covenants not to compete. When Canadian Holiday defaulted, Schaaf filed this libel pursuant to 46 U.S.C. § 951 et seq. to foreclose the mortgage. Georgian Bay filed a petition to intervene under Admiralty Rule 34 requesting the following relief:
 
 
 4
 "Wherefore, intervening petitioner, Chicago, Duluth & Georgian Bay Transit Company, prays this Honorable Court that the same restrictive covenant contained in the March 25, 1963 agreement between Petitioner and the Canadian Holiday Company, Inc. be included in the Bill of Sale of the SS North American to any purchaser at the foreclosure sale.
 
 
 5
 "Petitioner further prays that it be granted such other and further relief as may be just and equitable."
 
 
 6
 The district court dismissed the petition, holding inter alia that the covenant was a personal one and that, in any event, it constituted an unreasonable restraint of trade. The court postponed the sale but refused to permanently stay it pending an appeal. No application for supersedeas was made to this court. Georgian Bay appeared at and objected to the sale; nevertheless, the S.S. North American was sold to the Security-Peoples Trust Company, the admitted real party in interest of the mortgage assignment. While this appeal was pending, Security-Peoples sold the S.S. North American to third parties, who are not of record, without restriction as to its use.
 
 
 7
 After the appeal was briefed and argued before us, the court sua sponte raised the question of whether this case was moot and requested the parties to file briefs concerning this issue. We have examined the briefs and conclude that the circumstances which have occurred since the dismissal of the petition to intervene have rendered appellant's cause moot.
 
 
 8
 The refusal of the district court to grant a stay and the failure of appellant to apply for and obtain a stay from this court after its petition had been dismissed permitted the sale to be held and subsequently confirmed by the district court. The sale was neither fraudulent, accidental nor improper; it was held pursuant to a judicial decree. In The Denny, 127 F.2d 404 (C.A. 3, 1942), this court was confronted with a similar situation and stated:
 
 
 9
 "Rule 57 of the Admiralty Rules of the Supreme Court, 28 U.S.C.A. following section 723, contemplates the delivery of property in the custody of the marshal to the claimant upon the dismissal of the libel. The decree dismissing the libel was filed July 28th. The notice of appeal was not filed until October 20th. Between July 28th and October 20th nothing was done by the libellants to prevent the execution of the decree. After October 20th there was a notice of appeal of record but nothing to stay proceedings. For although an appeal from a decree of the district court may be taken by the filing of a notice of appeal, a stay of proceedings under the decree may only be had upon the filing of a supersedeas bond. * * * Since the marshal properly abandoned custody of the res and since there is neither stipulation nor bond to treat as a substituted res, neither the district court nor this court now has such jurisdiction in rem as would support a decree awarding possession of the vessel and its cargo." 127 F.2d at 407.
 
 
 10
 There can be no doubt that the proceeds of the sale constitute a substituted res and that the in rem admiralty jurisdiction is sustained thereby, United States v. The Antoinetta, 153 F.2d 138, 142 (C.A. 3, 1945), cert. denied, Lorenzo v. United States, 328 U.S. 863, 864, 66 S.Ct. 1368, 90 L.Ed. 1633 (1947), and that it is immaterial whether the vessel is within or outside the territorial jurisdiction of the district court. Ibid.; The Manuel Arnus, 141 F.2d 585, 586 (C.A. 5), cert. denied, Compania Transatlantic v. The Manuel Arnus, 323 U.S. 728, 65 S.Ct. 63, 89 L.Ed. 584 (1944). The fact remains, however, that the vessel is no longer in custodia legis. Assuming arguendo that we could grant the relief requested, that relief must operate on the vessel itself and not on the substituted res. This being so, it is clear that:
 
 
 11
 "* * * By the failure of appellant to obtain a supersedeas, the [vessel] * * * was released, and there is now no subject-matter upon which the judgment of this court could operate and give relief to appellant. The case has become moot. Heitmuller v. Stokes, 256 U.S. 359, 41 S.Ct. 522, 65 L.Ed. 990; Brownlow v. Schwartz, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620; Norwegian Nitrogen Products Co. v. United States Tariff Com., 274 U.S. 106, 47 S.Ct. 499, 71 L.Ed. 949; United States ex rel. v. Anchor Coal Co., 279 U.S. 812, 49 S.Ct. 262, 73 L.Ed. 971." Canal Steel Works, Inc. v. One Drag Line Dredge, 48 F.2d 212, 213 (C.A. 5), cert. denied, 284 U.S. 647, 52 S.Ct. 29, 76 L.Ed. 550 (1931).
 
 
 12
 See generally Wolfson & Kurland, Robertson & Kirkham Jurisdiction of the Supreme Court of the United States (2d ed.) §§ 270 et seq.; Diamond, Federal Jurisdiction to Decide Moot Cases, 94 U.Pa.L.Rev. 125, 133-135 (1946); Note, 103 U.Pa.L.Rev. 772 (1955).
 
 
 13
 Finding this case moot, we accordingly vacate the judgment of the district court and remand the cause with directions to dismiss the petition.[1]
 
 
 
 Notes:
 
 
 [1]
 This is the established practice of the Supreme Court in dealing with controversies which have become moot while an appeal is pending. United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950). The cases following this procedure are collected in notes 8 and 9 of Comment, 23 U.Chi.L.Rev. 77, 79-80 (1955). The Court has said that it is the duty of appellate courts to make this type of disposition. Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, 57 S.Ct. 202, 81 L.Ed. 178 (1936)