**DETROIT, TOLEDO AND IRONTON RAILROAD COMPANY and Grand Trunk Western Railroad Company, Plaintiffs,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**Civ. A. No. 82–74087.**

United States District Court,
E.D. Michigan, S.D.

Nov. 17, 1982.

John C. Danielson, Detroit, Mich., for plaintiffs.

Nancy Katz, Detroit, Mich., for defendant.

MEMORANDUM OPINION

DeMASCIO, District Judge.

Plaintiffs,. Detroit, Toledo and Ironton Railroad Company ("D.T. & I.") and Grand Trunk Western Railroad Company ("Grand Trunk") filed a complaint seeking specific performance of two 1975 contracts entered into with Consolidated Rail Corporation

("Conrail"). These contracts assured both contracting parties that each would have continued access to all through routes that are in the control of the other contracting party.

Plaintiffs sought and were granted a temporary restraining order on November 1, 1982 to maintain the status quo till we could hear the arguments more fully developed at a preliminary injunction hearing on November 10, 1982. We have heard extensive testimony and have considered the able briefs submitted by the parties. For the reasons stated herein, we conclude that a preliminary injunction is appropriate.

Before proceeding to the merits, we must determine whether we have jurisdiction over plaintiffs' claim. The defendant and the Interstate Commerce Commission ("ICC"), who is seeking to intervene as a defendant, contend that we lack jurisdiction over this claim. They argue that this dispute involves a rate proposal which is the exclusive province of the ICC. *Southern R. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *Southern Railway Company v. Interstate Commerce Commission*, 681 F.2d 29 (D.C.Cir.1982). These cases, however, do not involve a private contract. Defendant and ICC also rely upon a case in which a federal district judge deferred to the ICC, even though the parties had entered into a contract very similar to the one involved here. *Delaware & H. Ry. v. Consolidated Rail Corp.*, 533 F.Supp. 692 (N.D.N.Y.1981). In *Delaware & H. Ry.*, Conrail concurred in one new joint rate but refused to concur in a second joint rate covering a different line. This lack of concurrence allegedly harmed plaintiff by giving Conrail a competitive edge on a substitute route. The court determined that it did not have jurisdiction over this rate dispute. One of the reasons that the court deferred to the ICC was that the enforceability of a contract, the very one in dispute in this lawsuit, was being considered by the ICC. *Id.* at 694–695. Apparently, after considering the various relevant statutes and regulations in question, the ICC determined that it could not rescind the contract between the parties.

Finance Docket 29695, *Consolidated Rail Corporation—Petition to Require Cancellation of Agreement with Grand Trunk Western Railroad Company and Detroit, Toledo and Ironton Railroad Company* (April 21, 1982). The ICC has, therefore, since the *Delaware & H. Ry.* case, decided that the present contracts are enforceable.

■ The facts in *Delaware & H. Ry.* are distinguishable from the facts in the present case. It is important to note that plaintiffs are not challenging the ICC's jurisdiction to cancel *joint rates*. Rather, we are dealing here with Conrail's cancellation of through *routes*. It is not plausible that plaintiffs would have entered into its contracts with defendant, if defendant could cancel their access to through routes. We cannot defer to the ICC in what is basically a contract dispute. The Sixth Circuit has noted that nothing in the Staggers Act or any prior law gives the ICC the power to entertain questions concerning the existence or interpretation of a contract. *Cleveland-Cliffs Iron v. ICC*, 664 F.2d 568, 591 (6th Cir.1981). We conclude, therefore, that we have jurisdiction over this contract dispute.

We must now determine whether a preliminary injunction is warranted. There are four factors that are generally considered in deciding whether a preliminary injunction would be proper: Has petitioner made a strong showing of probable success at trial? Has petitioner shown irreparable injury? Would issuance of the preliminary injunction cause substantial harm to others? Where lies the public interest? *North Avondale Neighborhood Ass'n v. Cincinnati Met. H.A.*, 464 F.2d 486, 488 (6th Cir.1972).

■ After considering these four factors, we have determined that the plaintiffs have shown that a preliminary injunction is necessary. First, plaintiffs have made a sufficient showing of probable success on the merits. The following provisions of the contract are relevant to this present dispute:

1. Upon the acquisition by either party of a line of rail property or operating

rights over a line of railroad pursuant to the Final System Plan, CONRAIL and RAILROAD agree to maintain and keep open with respect to each other all routes and channels of trade via existing junctions and gateways, unless and until otherwise authorized by the Interstate Commerce Commission (Commission).

2. The present neutrality of handling traffic between railroads in reorganization and RAILROAD shall be continued so as to permit equal opportunity for service to and from all lines of CONRAIL and RAILROAD without discrimination as to routing or movement of traffic and without discrimination in the arrangement of schedules.

3. The parties shall continue the present traffic and operating relationships existing between railroads in reorganization and RAILROAD insofar as such continuation is feasible and within their control.

4. The parties shall accept, handle and deliver all cars in-bound and outbound, loaded and empty, without discrimination in promptness or frequency of service as between cars destined to or received from competing carriers and irrespective of destination or route of movement.

5. The parties shall refrain from doing anything to restrain or curtail the right of industries located on the lines now operated by railroads in reorganization to route traffic via existing routes and gateways.

These contract provisions show that the heart of the contract is the assurance by both parties that through routes will be maintained, and serviced properly. As defendant argues, it is true that the first paragraph contains a proviso which reads "unless and until otherwise authorized by the Interstate Commerce Commission." We conclude, however, that this proviso does not mean that the ICC can decide a contract dispute. This reading of the clause is consistent with the contract itself which clearly provides for judicial or arbitral resolution of contract disputes. (¶ 7). At best, this contract provision referring to the ICC is recognizing provisions like 49 U.S.C. § 10705a, which allow ICC to interfere with contract provisions under certain circumstances. Conrail cannot be relying on this section because it has not complied with its conditions. Conrail, in this present dispute, is attempting to violate most of the provisions of the contract; we cannot approve such an obvious flouting of the contract.

Plaintiffs have also met the second requirement for a preliminary injunction. They have established that they will suffer irreparable harm if they no longer have access to certain through routes. Incidentally, one of defendant's witnesses indicated that Conrail is planning on seeking the termination of plaintiffs' through routes of automotive goods in the future. The court is not basing its issuance of a preliminary injunction on this fact, but it does indicate the path that Conrail is attempting to pursue. Conrail will undoubtedly lose revenues if it cannot cancel these through routes, but that is not a basis for denying the preliminary injunction. Conrail should not be allowed to benefit even temporarily by its contract violation.

We also find that the issuance of a preliminary injunction will best serve the public interest. At the preliminary injunction hearing, plaintiffs presented numerous witnesses whom defendant was able to cross-examine; these witnesses attested to the harm that would result if the preliminary injunction were denied. Testimony from representatives of private business who rely on plaintiffs' services, unions whose members work for plaintiffs, and the Michigan Department of Transportation persuades us that the issuance of a preliminary injunction will further the public interest. This court respects the testimony of these impartial witnesses who in composite represent a broad spectrum of society. We conclude that plaintiffs have shown that the public interest will be best served by granting a preliminary injunction.

Plaintiffs have ably detailed their need for a preliminary injunction. We determine that the actions of Conrail, in light of the agreement between the parties, require that we issue the preliminary injunction plaintiffs have requested.

IT IS SO ORDERED.