Don TATE, et al., Plaintiffs-Appellees,

v.

Richard FREY, et al., Defendants-Third Party Plaintiffs-Appellees,

Commonwealth of Kentucky, et al., Third Party Defendants-Appellants.

No. 83–5386.

United States Court of Appeals, Sixth Circuit.

Argued March 8, 1984.

Decided June 1, 1984.

W. Waverley Townes (argued), Nold, Mosley, Clare, Hubbard & Rogers, Walker B. Smith (argued), Eleanor F. Martin, Robert H. Littlefield, Ellen G. Friedman, Legal Aid Society of Kentucky, Inc., Louisville, Ky., for appellees.

Barbara Jones (argued), Linda G. Cooper, David Sexton, Frankfort, Ky., for appellants.

Before ENGEL and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

This is an appeal from an order of the United States District Court for the Western District of Kentucky (Allen, J.) granting a preliminary injunction mandating the third party defendant-appellants, the Corrections Cabinet of the Commonwealth of Kentucky (the State), to reduce the number of convicted felons confined in the Jefferson County Jail and to transfer each convicted felon confined therein to a state pe-

nal facility within thirty (30) days after the imposition of sentence.

The relevant facts indicate that in January of 1975 an action was initiated by the inmates of Jefferson County Jail in Louisville, Kentucky against the superintendent of that institution, pursuant to 42 U.S.C. § 1983. In 1976 following an evidentiary hearing, the district court entered a preliminary injunction addressing sanitary conditions, rights of inmates confined to isolation and visitation privileges at the institution. *See Tate v. Kassulke,* 409 F.Supp. 651 (W.D.Ky.1976).

The inmates filed a second amended complaint in 1980, naming Richard Frey (successor to Kassulke as superintendent of Corrections) as a defendant, charging numerous Eighth Amendment and other constitutional infringements resulting from the existing overcrowded conditions at the Jefferson County Jail.

On March 15, 1983 the county officials joined certain state corrections officials of the Commonwealth of Kentucky in a third-party complaint seeking: (a) money damages against the state as reimbursement for any sums which might be assessed against the county arising from the overcrowding of Jefferson County Jail and (b) a preliminary injunction enjoining state corrections officials from refusing to timely accept felons incarcerated in the Jefferson County Jail awaiting transfer to state facilities.[1]

On April 11, 1983, a hearing was conducted before the United States District Court for the Western District of Kentucky subsequent to which the trial judge, on April 20, 1983, issued a memorandum order acknowledging the lack of sleeping facilities available to the inmates of the Jefferson County Jail requiring them to sleep on floors and shelves for days on end, all as a result of overcrowding caused in part by the controlled intake policy mandated by the consent decree entered in *Kendrick v. Bland* in July of 1982. The memorandum order, deferring formal consideration of any injunction, directed the parties to confer with a view toward negotiating a program calculated to reduce the overcrowding and attendant unconstitutional conditions existing at the Jefferson County Jail.

Thereafter, on May 17, 1983, the parties, having failed to negotiate a resolution, the district court convened a hearing to address the motion for a preliminary injunction. At the conclusion of the hearings on May 19, 1983, it issued a mandatory injunction against the state corrections officials enjoining them to immediately reduce the number of convicted felons awaiting transfer to state facilities incarcerated in the Jefferson County Jail through a progressive reduction which would achieve the desired level of no more than thirty felons as of August 20, 1983. Additionally, the court enjoined the state corrections officials from permitting any convicted felons to remain incarcerated at the Jefferson County Jail for a period of more than thirty days from the imposition of sentence. The present appeal ensued.

On appeal the state charged that the district court erred in permitting its joinder as a third party defendant pursuant to Rule 14(a) Fed.R.Civ.P. and in granting the preliminary injunction here in issue.

Initially, the appellants have asserted that the county failed to allege any substantive basis to support its claim for relief against the state.

■ Rule 14(a) provides in pertinent part:

---

1. As a result of a consent decree entered in *Kendrick v. Bland,* Case No. 76–0079–P (W.D. Ky.) (Johnstone, J.), in July of 1982, the thrust of which was to alleviate overcrowding in the state penal institutions, the state implemented a controlled intake policy whereby it refused to accept custody of convicted felons awaiting transfer from local jails until it had bed space available at state penal facilities. In operation, the controlled intake policy merely transferred the overcrowding of state penal facilities to the county prison systems. At the time of the hearing in this case, there were 145 sentenced felons in the Jefferson County jail, waiting for transfer to state institutions. (App. 87). Prior to the inception of the controlled intake program felons were immediately transferred from local jails to state facilities.

### (a) When Defendant May Bring in Third Party.

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

While the purpose of Rule 14 is to encourage judicial economy by permitting courts to dispose of multiple claims which arise out of the same set of facts, an impleader action is proper when there is a right to relief in the third-party plaintiff under applicable substantive law against the third-party defendant.

■ A review of Kentucky state law indicates that the responsibility to provide for the confinement of convicted felons rests upon the state. Kentucky Revised Statute § 532.100 provides that convicted felons be committed to the state for incarceration.[2] Consequently, the third party plaintiffs have properly identified a substantive basis for their claim against the state in the third-party complaint. Additionally, evidence submitted during the hearings disclosed that the state through implementation of its controlled intake procedure has refused to timely accept convicted felons as required by state law, which inaction the district court specifically determined contributed to the unconstitutional overcrowding of the Jefferson County Jail. In light of the district court's determination that the controlled intake procedure contributed to the overcrowding of the Jefferson County Jail, complete relief would be elusive, if not impossible, to achieve absent joinder of the state as a third-party to this action. Accordingly, the district court

properly permitted the joinder of the state as a third party defendant pursuant to Rule 14(a) Fed.R.Civ.P.

The Appellants have also alleged that even if they were properly joined as third party defendants, the district court erred in granting a preliminary injunction requiring the state to conform its actions to state law in light of the recent Supreme Court decision in *Pennhurst State School and Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

In *Pennhurst,* the Supreme Court concluded that a federal suit against state officials founded in state law contravenes the Eleventh Amendment where the relief sought and ordered impacts directly on the state itself.

■ Specifically, the Court in *Pennhurst* decided that the Eleventh Amendment prohibited a federal district court from mandating state officials, violating state law, to conform their conduct to state law with respect to a "condition of confinement action" involving a state institution since the state was the real, substantial party in interest. While directing federal courts to abstain from enjoining state officials from violating state law, the court specifically declined to address the issue of the district court's jurisdiction to order prospective relief arising from violations of federal law, but did incidentally recognize that any such relief should be constrained by principles of comity and federalism. *Id.* 104 S.Ct. at 910 n. 13.[3] In light of *Pennhurst,* the appellants have asserted that the district court erred in granting the preliminary injunction as it was without jurisdiction to entertain appellant's request for injunctive

---

**2.** Section 532.100 provides in pertinent part:

(1) When an indeterminate term [1 year or more] of imprisonment is imposed, the court shall commit the defendant to the custody of the bureau of corrections for the term of his sentence and until released in accordance with the law.

A commentary on that statute states that: "Subsection (1) assures that felony offenders, once convicted and sentenced to imprisonment, *shall* be delivered to the Department [now Cabi-

net] of Corrections, with the specific place of incarceration to be left to the Department [Cabinet]." (Emphasis added).

**3.** In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court emphasized that while the Eleventh Amendment bars certain forms of injunctive relief against state officials for violation of federal law, a federal court may award an injunction that governs the official's future conduct.

relief pursuant to the Eleventh Amendment.

In the present case, although state law is the source of the state's duty to accept and confine convicted felons in state facilities, the district court expressly declined to premise its decision upon a violation of state law, but rather based its grant of the preliminary injunction upon a finding of federal constitutional infringements arising in part out of the actions of the state defendants. Specifically, the district court held:

> ... the Court does not reach that question [interpretation of state law] since the Court finds that there are constitutional violations of inmates rights which arise in part because of the actions of the State defendants.

Indeed, the district court during the hearing on the preliminary injunction received substantial evidence probative of the unconstitutional conditions prevalent at the Jefferson County Jail. The district court found that as a result of the overcrowded condition of the jail, inmates were required to sleep on tables, shelves and floors. Additionally, there were inmates who were placed in holding cells for several days where no beds or sleeping facilities of any type were available.

Accordingly, the district court issued the preliminary injunction against the state defendants upon federal constitutional grounds and not state law.

■ Appellate review of a district court order granting or denying a preliminary injunction is limited to a determination of whether the district court abused its discretion. *USACO Coal Company v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir.1982); *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir.1982), *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977). When evaluating the propriety of the district court's action in granting or refusing preliminary injunctions, this court on appeal must consider the likelihood of success on the merits of the action, the irreparable harm which could result without the relief requested, the impact on the public interest, and the possibility of substantial harm to others should the injunction be refused or granted. *USACO Coal Company, supra; Friendship Materials, Inc., supra; Mason County Medical Association, supra; Adams v. Federal Express Corp.*, 547 F.2d 319 (6th Cir.1976).

■ Although the criteria delineated should be considered by the district court in the exercise of its discretion, "they do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief as "[A] fixed legal standard is not the essence of equity jurisprudence." *Friendship Materials, Inc., supra* at 102, *citing Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir.1978). Moreover, an appellate court reviewing the propriety of a preliminary injunction should abstain from any comprehensive discussion or review of the merits of the cause beyond the bare essentials necessary to determine if the trial court exceeded reasonable discretion in rendering preliminary relief as the lower court hearing was in no sense a final disposition. *Securities and Exchange Commission v. Senex Corporation*, 534 F.2d 1240 (6th Cir. 1976); *Brandeis Machinery and Supply Corp. v. Barber-Greene Company*, 503 F.2d 503 (6th Cir.1974).

At the time the district court granted the preliminary injunction here in issue, the Supreme Court had not released its pronouncements in *Pennhurst*. It is obvious, however, that the district court premised the grant of the preliminary injunction upon constitutional grounds and not state law. Acknowledging that the preliminary injunction, by its very nature is merely interlocutory, the district court should be extended the opportunity to develop more fully the facts and circumstances peculiar to the case *sub judice* when the motion for permanent injunction against the third party defendants is heard, taking into consideration the impact of the Supreme Court's decision in *Pennhurst* upon any permanent relief the district court may deem appropriate.

Having examined the record transmitted to this court on appeal it is manifest that the district court did not abuse its discretion in granting the preliminary injunction against the third party defendants. Accordingly, the district court's grant of a preliminary injunction against the third party defendants is AFFIRMED.